Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| DAVID HERNÁNDEZ LÓPEZ<br><br>Parte recurrente<br><br>v.<br><br>DEPARTAMENTO DE DESARROLLO ECONÓMICO Y COMERCIO OFICINA DE GERENCIA DE PERMISOS (OGPe)<br><br>Parte recurrida | TA2025RA00192 | REVISIÓN ADMINISTRATIVA<br>Procedente de la Oficina de Gerencia de Permisos (OGPe)<br><br>Caso OGPe:<br>2023-515771-CCO-013980<br><br>Sobre: Consulta de Construcción |

Panel integrado por su presidente, el Juez Sánchez Ramos, la Jueza Romero García y el Juez Pérez Ocasio.

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 1 de octubre de 2025.

Comparece ante nos, David Hernández López, en adelante, Hernández López o recurrente, solicitando que revisemos la *"Resolución de Consulta de Construcción"* de la Oficina de Gerencia de Permisos, en adelante, OGPe, del 6 de marzo de 2025. En la misma, la agencia denegó un permiso de construcción al recurrente.

Por los fundamentos que expondremos a continuación, *confirmamos* el dictamen recurrido.

**I.**

En el año 2022, Zaida Correa, vecina colindante de Hernández López, radicó la querella Núm. 2022-SRQ-011947, ante la OGPe.[1] En la misma aduce que el recurrente había construido una ampliación de su marquesina que invadía el paseo peatonal y una

---

[1] Apéndice del recurso, Anejo 5.

habitación en la parte posterior que no cumplió con los límites establecidos y requeridos entre una residencia y la otra.

A estos efectos, el 17 de noviembre de 2023, Hernández López presentó una Consulta de Construcción ante la OGPe, para la edificación de un proyecto residencial unifamiliar en el Municipio de Gurabo, ubicada en un Distrito Residencial Intermedio.[2] El recurrente solicitó permisos para realizar unas variaciones, incluyendo una ampliación de la marquesina. Sin embargo, sostuvo que la misma no tenía el propósito de alterar el uso permitido de la propiedad.

Por su parte, el 18 de enero de 2024, Zaida Correa presentó una *"Solicitud de Intervención"* ante la OGPe, con relación a la Consulta de Construcción del recurrente.[3] La misma fue declarada *"Ha Lugar"* por la agencia recurrida el 30 de enero de 2024. En la misma, la interventora añadió que la propiedad objeto de consulta busca legalizar una ampliación del patio lateral a la derecha, la cual colinda con una de las calles de la urbanización. Esto, a su entender, crea un problema de seguridad, por merma en la visibilidad para el tránsito de vehículos.

Finalmente, el 6 de marzo de 2025, la OGPe emitió una *"Resolución de Consulta de Construcción"* en la que concluyó que la misma *no es viable.*[4]

Inconforme, Hernández López solicitó reconsideración a OGPe el 23 de marzo de 2025.[5] El mismo fue acogido el 8 de abril de 2025. El 23 de julio de 2025, la agencia declaró *"No Ha Lugar"* la misma.[6]

Por ello, el 21 de agosto de 2025, el recurrente presentó ante esta Curia un *"Recurso de Revisión Administrativa"*, en el que hizo el siguiente señalamiento de error:

---

[2] Apéndice de recurso, Anejo 2.
[3] *Id.*, Anejo 5.
[4] *Id.*, Anejo 2.
[5] *Id.*, Anejo 6.
[6] *Id.*

**Erro la OGPe al expedir una Resolución declarando no favorable la consulta de construcción sin un expediente completo y sin perfeccionar.**

Mediante *"Resolución"* del 26 de agosto de 2025 concedimos a la OGPe hasta el 22 de septiembre de 2025 para presentar su posición en cuanto al recurso, conforme a la Regla 63 del Reglamento de Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 83-84, 215 DPR ___ (2025).

Sin embargo, surge del Sistema Unificado de Manejo y Administración de Casos (SUMAC) que la notificación del recurso a la agencia recurrida y nuestras resoluciones a OGPe fueron devueltas. No obstante, luego de un análisis de los documentos que obran en autos, justipreciamos que contamos con lo necesario para adjudicar. Por todo lo cual, amparados en la Regla 7(B)(5) de nuestro Reglamentos, supra, pág. 15, prescindimos de la comparecencia de la agencia y las partes recurridas.

## II.

### A. Revisión Administrativa

La revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de los márgenes de las facultades que le fueron delegadas por ley. A su vez, posibilita el poder constatar que los organismos administrativos "cumplan con los mandatos constitucionales que rigen el ejercicio de su función, especialmente con los requisitos del debido proceso de ley". *Vázquez et al. v. DACo,* 2025 TSPR 56, 215 DPR ___ (2025); *Simpson, Passalaqcua v. Quirós, Betances,* 2024 TSPR 64, 213 DPR ___ (2024); *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* 213 DPR 743, 754 (2024); *Comisión Ciudadanos v. G.P. Real Prop.,* 173 DPR 998, 1015 (2008).

En términos simples, la revisión judicial constituye "el recurso exclusivo para revisar los méritos de una decisión administrativa sea ésta de naturaleza adjudicativa o de naturaleza informal". *Simpson, Passalqcua v. Quirós, Betances*, supra; *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* supra, pág. 753; *Depto. Educ. v. Sindicato Puertorriqueño,* 168 DPR 527, 543 (2006); Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, en adelante, LPAUG, Ley 38-2017, 3 LPRA sec. 9672. La precitada Ley es la que autoriza la revisión judicial de las decisiones de las agencias administrativas. *OEG v. Martínez Giraud,* 210 DPR 79, 88 (2022); LPAUG, supra, secs. 9671-9677.

La LPAUG, supra, sec. 9675 dispone que, "[l]as determinaciones de derecho pueden ser revisables en todos sus aspectos por el tribunal". *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 36 (2018); *Torres Rivera v. Policía de PR,* 196 DPR 606, 627 (2016). Tanto la referida Ley, como la jurisprudencia aplicable, establecen que la función revisora de las decisiones administrativas concedida a los tribunales apelativos consiste esencialmente en determinar si la actuación de la agencia fue dictada dentro de las facultades que le fueron conferidas por ley, y si la misma es legal y razonable. *Hernández, Álvarez v. Centro Unido,* 168 DPR 592, 616 (2006); *T–JAC v. Caguas Centrum,* 148 DPR 70, 80 (1999).

Por lo tanto, los tribunales deben ser cautelosos al intervenir con las decisiones administrativas. *Empresas Loyola v. Com. Ciudadanos,* 186 DPR 1033, 1041 (2012).

Nuestro más Alto Foro ha establecido que las evaluaciones de las agencias administrativas sobre los hechos de un caso tienen una ***presunción de regularidad y corrección***, haciendo necesario que aquel que desee impugnar dichas decisiones, presente evidencia suficiente que derrote la misma, y no descanse en meras alegaciones. *Katiria's Café, Inc vs. Mun. San Juan,* 2025 TSPR 33,

215 DPR ___ (2025); *Transp. Sonell, v. Jta. Subastas ACT,* 2024 TSPR 82, 214 DPR ___ (2024); *Otero Rivera v. USAA Fed. Savs. Bank,* 2024 TSPR 70, 213 DPR___ (2024); *Hernández Feliciano v. Mun. Quebradillas,* 211 DPR 99, 114 (2023); *OEG v. Martínez Giraud,* supra, pág. 89; *Super Asphalt v. AFI y otro,* 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía,* supra, pág. 35. Conforme lo ha interpretado nuestro Tribunal Supremo, la revisión judicial de este tipo de decisiones se debe limitar a determinar si la actuación de la agencia es *arbitraria, ilegal,* o tan *irrazonable* que la misma constituye un abuso de discreción. *Rebollo v. Yiyi Motors,* 161 DPR 69, 76 (2004).

Sin embargo, la deferencia hacia las decisiones administrativas no es automática. Recientemente, en *Vázquez et al. vs. DACo,* supra, nuestro Máximo Foro, analizando la Sección 9675 de la LPAUG, explicó que:

> [l]a interpretación de la ley es una tarea que corresponde inherentemente a los tribunales. Así, enfatizamos la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU, supra. Como corolario, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, **será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos.**
>
> (Énfasis suplido).

Es decir, concluyó que, en virtud de la precitada disposición estatutaria, el legislador eliminó la deferencia judicial sobre las determinaciones de derecho que realicen las agencias administrativas. *Vázquez et al. v. DACo,* supra.

Por otro lado, el Art. 4.006, de la Ley de la Judicatura de 2003, 4 LPRA sec. 24y, establece en su inciso (c) la competencia del Tribunal de Apelaciones. A esos efectos, dispone que este Foro conocerá mediante recurso de revisión judicial, las

decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. *Simpson, Passalacqua vs. Quirós, Betances,* supra*; AAA v. UIA,* 200 DPR 903, 910-911 (2018); *Depto. Educ. v. Sindicato Puertorriqueño,* supra, pág. 543; *Procuradora Paciente v. MCS,* 163 DPR 21, 33-34 (2004).

### B. Facultades de la Oficina de Gerencias de Permisos

La *Ley para la Reforma del Proceso de Permisos de Puerto Rico,* La Ley Núm. 161–2009, en adelante, Ley 161-2009, 23 LPRA sec. 9011 *et seq.*, se aprobó con el propósito de establecer el marco legal que regiría la solicitud, evaluación, concesión y denegación de permisos de uso y de construcción y desarrollo de terrenos. Exposición de Motivos de la Ley 161–2009; *Horizon v. Jta. Revisora, RA Holdings,* 191 DPR 228, 236 (2014). Así pues, se estableció como política pública mejorar la calidad y eficiencia en la administración de los procesos de evaluación de solicitudes para el otorgamiento o denegación de determinaciones finales y permisos para desarrollo de proyectos de construcción en Puerto Rico. 23 LPRA sec. 9011 n. Para ello, se creó la OGPe como el organismo administrativo encargado de evaluar solicitudes y emitir o denegar, mediante determinaciones finales, permisos, licencias, inspecciones, certificaciones y cualquier otro trámite necesario o que incidan de alguna manera en la operación de un negocio en Puerto Rico. 23 LPRA sec. 9012d.

Por ser relevante a la controversia de marras, destacamos que la precitada Ley define el término "variación en construcción" de la siguiente manera:

> Autorización concedida por el Secretario Auxiliar para la construcción de una estructura o parte de ésta, que no satisfaga los reglamentos, Planes de Ordenación y Códigos establecidos, en cuanto a parámetros de construcción y densidad poblacional, pero que, debido a la condición del solar, la ubicación especial o el uso particular, confronte una

dificultad práctica que amerite por excepción una consideración especial, ***siempre que no exista perjuicio a las propiedades vecinas.*** Se podrá conceder una variación en los parámetros de construcción, que nunca podrá conllevar un cambio en densidad e intensidad, tampoco se considerará una recalificación. La misma es permisible siempre y cuando el uso propuesto sea compatible con el contemplado en el tipo de distrito donde ubica y cumpla con los requisitos aplicables a este tipo de variación.

Artículo 1.5(94) de la Ley 161-2009, supra, sec. 9011.

(Énfasis suplido).

Además, este estatuto diferencia el *permiso discrecional* del *ministerial*. Su Art. 1.5 define *discrecional*, entre otros conceptos, e indica, en lo pertinente, que:

"Discrecional" — Describe una determinación que conlleva juicio subjetivo por parte de la Junta Adjudicativa, del Secretario Auxiliar o un Municipio Autónomo... sobre la forma en que se conduce o propone una actividad o acción. [E]stos utilizan su conocimiento especializado, discreción y juicio para llegar a su determinación, ya que esta determinación considera otros asuntos además del uso de estándares fijos o medidas objetivas. *El Secretario Auxiliar* o el Municipio Autónomo... puede utilizar juicios subjetivos discrecionales al decidir si una actividad debe ser realizada o cómo debe realizarse.

Artículo 1.5(94) de la Ley 161-2009, supra, sec. 9011.

Al respecto de las determinaciones discrecionales, el Artículo 8.8A de la Ley en cuestión, dispone que:

Una vez el Secretario Auxiliar o el Municipio Autónomo con Jerarquía de la I a la V conceda o deniegue una solicitud discrecional, procederá a notificar su determinación de conformidad el procedimiento dispuesto para ello en el Reglamento Conjunto. La concesión o denegación de una solicitud discrecional se considerará como una determinación final de la Oficina de Gerencia de Permisos. Dicha Oficina notificará a la Junta de Planificación las determinaciones finales relacionadas a usos de terrenos que conlleven recalificación. La notificación de una determinación final de la Oficina de Gerencia de Permisos contendrá determinaciones de hechos y conclusiones de

derecho. Además, la parte adversamente afectada por una actuación, determinación final o resolución de la Oficina de Gerencia de Permisos o el Municipio Autónomo con Jerarquía de la I a la V podrá presentar un recurso de revisión al foro competente.

Ley 161-2009, supra, sec. 9018g-1.

Según surge de los artículos precitados, la Ley 161-2009, supra, reconoce autoridad por igual al Secretario Auxiliar o a la Junta Adjudicativa para evaluar una solicitud de *permiso discrecional*. Sin embargo, mediante la Resolución JA-2017-001 del 25 de abril de 2017, la Junta Adjudicativa delegó al Secretario Auxiliar, antes Director Ejecutivo de la OGPe la adjudicación de ciertas solicitudes de variaciones.

El Secretario Auxiliar es el encargado de la dirección y supervisión de la OGPe. 23 LPRA secs. 9012 y 9012a (2011 supl. 2019).  El Art. 2.3 de la Ley 161, dispone que el Secretario Auxiliar tendrá, entre otros, los siguientes poderes:

> (e) Firmar, expedir y notificar la determinación de cumplimiento ambiental, la adjudicación de determinaciones finales y permisos ministeriales, aquellas [determinaciones] discrecionales delegadas por la Junta Adjudicativa, cualquier trámite necesario o que incida de forma alguna en la operación de un negocio en Puerto Rico o cualquier comunicación requerida al amparo de este capítulo;
> [...]
> (z) Evaluar y adjudicar determinaciones finales y permisos ministeriales y aquellos asuntos de carácter discrecional que le hayan sido delegadas por la Junta Adjudicativa y cualquier trámite necesario o que incida de forma alguna en la operación de un negocio en Puerto Rico; [. . .].
> [...]
> (cc) Evaluar y adjudicar variaciones en lotificación, construcción y uso que le hayan sido delegados por la Junta Adjudicativa;
> [...]
> (mm) Evaluar y adjudicar asuntos discrecionales que le hayan sido delegados por la Junta Adjudicativa;
> [...]

### C. Reglamento Conjunto

Por virtud de la Ley Núm. 161-2009, *supra,* la Junta de Planificación, en colaboración con la OGPe, adoptó el R*eglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios*, en adelante, Reglamento Conjunto, Reglamento Núm. 9473 del 16 de junio de 2023. El mencionado reglamento se creó con el propósito de detallar el sistema unificado de permisos y trámites relacionados al desarrollo de negocios y uso de terrenos, a través de normas claras, objetiva y uniformes para el manejo ágil y eficaz de los procesos.

En cuanto al asunto ante nuestra consideración, el Reglamento Conjunto establece en la Sección 6.3.2.1 que, la variación en construcción no va dirigida a alterar el uso permitido en el distrito, sino a dispensar al propietario del cumplimiento de uno o más de los requisitos que establece el Reglamento Conjunto para la zona o distrito de calificación donde ubica o radica el inmueble o propiedad. De esta manera, la parte que solicita la variación desea seguir utilizando la propiedad para el uso permitido por la reglamentación, pero necesita que se le exima de uno de los requisitos establecidos en el distrito de calificación para asegurar la viabilidad del uso permitido.

Recalcamos que, toda variación debe ser solicitada por el dueño de la propiedad o por un representante autorizado a través de un escrito en el cual señale los motivos, fundamentos y razones en apoyo de su solicitud. Sección 6.3.1.3 del Reglamento Conjunto.

En cuanto a las condiciones que la OGPe tomará en consideración para otorgar variaciones, la Sección 6.3.2.3 del Reglamento Conjunto dispone que:

a. El Secretario Auxiliar de la OGPe, los Municipios Autónomos con Jerarquía de la I a la III, a los cuales se le haya delegado dicha facultad por medio del Convenio de Transferencia, autorizará variación en construcción,

lotificación u otras para los usos que tolera el distrito tomando en consideración, entre otros, los siguientes factores:

1. El solar tenga una condición particular que no permite que se cumpla con las disposiciones de este Reglamento.

2. El solar tenga una ubicación especial o el uso particular confronta una dificultad práctica y amerita una consideración especial.

***3. La variación solicitada no perjudica propiedades vecinas, la disponibilidad de infraestructura y el ambiente del vecindario.***

4. No se afecte el uso agrícola, la productividad agrícola de los terrenos, los recursos naturales, históricos o culturales existentes, si alguno.

5. Para variar los parámetros de construcción sobre densidad e intensidad, el uso propuesto deberá ser uno contemplado en el distrito en que ubica.

6. La magnitud de la variación es la necesaria para asegurar la viabilidad del uso permitido y no es viable considerar otras alternativas para salvar el problema presentado.

b. En las Áreas de Planificación Especial, el Secretario Auxiliar de la OGPe especificará la naturaleza y extensión de las variaciones en construcción u otras variaciones y también prescribirá aquellas condiciones que a su juicio son necesarias para asegurar el cumplimiento de los criterios que se establecen en esta Sección.

c. Las variaciones autorizadas quedarán sujetas al cumplimiento de las condiciones que se establezcan y a las demás disposiciones de ésta o de cualquier otra reglamentación aplicable.

d. El incumplimiento de cualquiera de dichas condiciones constituirá una violación a este Reglamento y podría constituir base suficiente para la revocación de la variación en todas sus partes.

(Énfasis suplido).

De igual forma, el Reglamento Conjunto establece en su Sección 6.3.2.4 que no podrá utilizarse una variación en construcción, lotificación u otras, en todo o en parte, a menos que:

a) Que la variación sea necesaria para la preservación y el disfrute de un derecho de propiedad y se demuestre que la variación aliviará un prejuicio claramente demostrable.

b) Que la autorización de tal variación no afectará adversamente el disfrute y valor de las pertenencias cercanas en el uso presente y para cualquier otro uso futuro permitido.

c) Que el peticionario, a su vez, está en disposición de aceptar las condiciones y requisitos adicionales a los requisitos reglamentarios que el Secretario Auxiliar de la OGPe o Municipio Autónomo con Jerarquía de la I a la III le imponga para beneficio o protección del interés público.

d) Solicitar comentarios a la Unidad de Hidrogeología de la JP en áreas propensas a inundaciones o a deslizamientos de terrenos.

e) No afecte la integridad ecológica de la Reserva Agrícola, Natural, Áreas de Planificación Especial o se ocasione peligro a los recursos naturales, históricos, culturales o agrícolas existentes.

Por último, nuestro Tribunal Supremo ha expresado que el propósito de las variaciones es aliviar las restricciones que regulan el disfrute de determinada propiedad, cuando la aplicación de la reglamentación sea irrazonable y le ocasione perjuicios a su propietario. *Empresas Ferrer v. A.R.Pe.,* 172 DPR 254, 267 (2007). De esta manera, las variaciones evitan que "una reglamentación existente se convierta en un instrumento inflexible e incapaz de acomodarse a situaciones extraordinarias". *Íd.* Empero, dado al carácter excepcional de las variaciones, las mismas *no se favorecen y solo deben concederse en situaciones realmente extraordinarias, cuando estén claramente justificadas y se procesan conforme a las leyes y los reglamentos aplicables". Íd. (Énfasis suplido).* Lo anterior se debe a que, "el uso inapropiado e indiscriminado de este mecanismo podría destruir todo nuestro esquema de zonificación y cambiar eventualmente las características de un distrito, planificado originalmente con una infraestructura para ciertos usos". *A.R.P.E. v. J.A.C.L.,* 124 DPR 858, 862 (1989).

**III.**

Hernández López recurre ante esta Curia alegando que OGPe erró al declarar no favorable su consulta de construcción, por no contar con un expediente completo. Nos solicita, por lo tanto, que revoquemos su dictamen, y devolvamos el caso a la agencia recurrida, para que esta enmiende su resolución. *No le asiste la razón.*

De entrada, es importante subrayar que la evaluación de la consulta de construcción del caso de epígrafe es un *deber discrecional* ejercido por el Secretario Auxiliar de la OGPe. Como vimos, el mismo conlleva un juicio subjetivo. La disposición estatutaria al respecto, como vimos, lo faculta a emplear un análisis subjetivo, ya que su decisión deberá considerar "otros asuntos además del uso de estándares fijos o medidas objetivas". Artículo 1.5(94) de la Ley 161-2009, supra, sec. 9011. Es decir, la misma Ley reconoce que la determinación es una discrecional, no matemática o exacta, según pareciera requerir el recurrente, quien solicita evaluaciones o estudios técnicos.

El ejercicio subjetivo y discrecional para conceder o rechazar permisos para variaciones en construcción no puede ser de otra manera. Estos son, esencialmente, un tipo de permisos especiales, ya que no cumplen con los parámetros de construcción reglamentarios. Como vimos, tanto la Ley como la jurisprudencia han establecido que solo en circunstancias extraordinarias las mismas proceden. Lo solicitado por el recurrente no es solo una excepción a las disposiciones reglamentarias de construcción sobre las cuales no tiene derecho, sino que el mismo requiere un examen tendencioso.

Sin embargo, tampoco pretendemos relegar la resolución de la agencia recurrida. La misma fue satisfactoriamente preparada. No solo esbozó el derecho que le facultó declarar la consulta no

favorable, sino los criterios utilizados para evaluar la misma. Incluso, en ella se señalan las medidas y los parámetros propuestos por el recurrente, en contraposición a los requeridos en un distrito residencial intermedio. También, contrastó con objetividad los planteamientos de Zaida Correa, ante los obstáculos que enfrentó su solicitud.

Evaluados los criterios del Reglamento Conjunto, supra, la solicitud del recurrente ante la agencia recurrida y el expediente que obra en autos, concluimos que la OGPe actuó correctamente. Del expediente surge que la variación en construcción presenta un problema con las propiedades vecinas, creando un riesgo de seguridad.

**IV.**

Por los fundamentos antes expuestos, *confirmamos la resolución recurrida.*

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones